IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD GAMACHE,

    Plaintiff,                           No. CIV S-04-0859 RRB PAN P

    vs.

BRETT WILLIAMS, M.D., etc., et al.,    ORDER

    Defendants.

_____/

        Plaintiff is a former state prisoner proceeding pro se with this civil rights action seeking relief pursuant to 42 U.S.C. § 1983.  Before the court is the February 24, 2006 motion to dismiss filed by defendants James Goodnight, M.D., Ph.D., and Bruce Wolfe, M.D.  The court has determined that this motion shall be submitted upon the record and briefs on file and, accordingly, the date for hearing of this matter shall be vacated.  Local Rule 78-230.  Upon review of the motion and the documents in support and opposition, and good cause appearing therefor, THE COURT FINDS AND ORDERS AS FOLLOWS:

        In the first cause of action of plaintiff's August 9, 2005 second amended complaint, plaintiff alleges that after he was diagnosed with the Hepatitis C Virus ("HCV"), defendants refused to provide plaintiff with a liver biopsy, despite doctor's orders to provide him

1

one, refused to process plaintiff's administrative appeal seeking the liver biopsy and interferon treatment, interfered with plaintiff's access to the courts and conspired to delay and/or deny additional medical appointments and treatments. (Pl.'s Amended Complaint at 21.) Plaintiff contends defendants were deliberately indifferent and recklessly disregarded plaintiff's serious medical needs by denying him reasonable and necessary medical treatment including, but not limited to, pegylated interferon with ribavirin as approved by Dr. Jerome Sands on December 12, 2001, and as ordered by Dr. Rachell Tortolini on April 13, 2005, and by denying and unnecessarily delaying a liver biopsy ordered by defendant Dr. Bruce Wolfe in November 2003,[1] for the diagnosis and treatment of plaintiff's chronic HCV and cirrhosis of the liver in violation of plaintiff's Eighth and Fourteenth Amendment rights. (Second Amended Complaint at 45.) Plaintiff contends he suffered significant and permanent damage to his liver, advance stages of cirrhosis of the liver, liver cancer, the need for a liver transplant or possible premature death, as a result of defendants' conduct. (Second Amended Complaint at 45.) Plaintiff seeks monetary damages and declaratory and injunctive relief.

Defendants Wolfe and Goodnight seek an order dismissing them from this action, arguing that plaintiff has failed to state a claim against either of them.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no

---

[1] Although plaintiff states in "November 2004," (Second Amended Complaint at 45), it appears that was a typographical error. Plaintiff's earlier statements and exhibits confirm Dr. Wolfe saw plaintiff on November 20, 2003. (Second Amended Complaint at 14; Ex. M.)

1  set of facts in support of the claim that would entitle him to relief.  See Hishon v. King &
2  Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also
3  Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

        In his second amended complaint, plaintiff alleges defendants Goodnight and Wolfe were employed by U.C. Davis Medical Center, which is an off-site medical facility under contract with the State of California and Mule Creek State Prison ("MCSP") to provide medical services to inmates confined in the California Department of Corrections and MCSP.  (Pl.'s Second Amended Complaint at 4.)  Plaintiff alleges defendants Goodnight and Wolfe were specialists in the treatment of those individuals infected with HCV, and states that as hepatologists, they were responsible for ordering all diagnostic examinations and medical treatment, including liver biopsies and interferon treatments.  (Pl.'s Second Amended Complaint at 4.)

        Plaintiff pursued administrative appeals in an effort to obtain treatment for his HCV.  (Pl.'s Second Amended Complaint at 9-10; 11-13.)  On July 15, 2003, defendant Dr. Galloway submitted a Request for Telemedicine Consultation to the Medical Authorization Committee ("MAR") for approval.  On July 22, 2003, the MAR Committee approved plaintiff for an HCV treatment consultation.  (Id., Ex. I.)  On November 18, 2003, blood tests were taken in preparation for the telemedicine consultation.  (Id. at 13.)

        On November 20, 2003, plaintiff was called to the prison's Emergency Room for a Telemedicine Consultation with defendant Dr. Bruce Wolfe via video teleconferencing.  (Pl.'s Second Amended Complaint at 14.)  Plaintiff alleges he asked Dr. Wolfe to order pegylated interferon with ribaviren in order to prevent further damage to his liver.  (Id.)  Plaintiff states he told Dr. Wolfe that on December 10, 2001, a Dr. Jerome Sands had ordered that treatment for plaintiff because it was necessary to prevent further damage to plaintiff's liver.  (Id.) Plaintiff alleges Dr. Wolfe told plaintiff that because plaintiff's ALT levels were only 83, this treatment was not necessary.  (Id.)  Plaintiff objected and made further requests for treatment.  (Id.)

1        Plaintiff contends that Dr. Wolfe then completed a CDC-7221 "Telemedicine
2 Physician's Order" form, stating he was ordering a liver biopsy to determine the current stage of
3 damage to plaintiff's liver and to make further treatment decisions.  (Id., 14 & Ex. M.)  Plaintiff
4 notes defendant Debrina Williams was present during the teleconference and was aware
5 defendant Wolfe ordered a liver biopsy to be scheduled.  (Id.)

6        The sole allegations concerning defendant Dr. Goodnight appear to revolve
7 around his alleged failure to intervene on plaintiff's behalf.  It is undisputed that Dr. Goodnight
8 did not examine or treat plaintiff.  Indeed, the sole role Dr. Goodnight played here was to respond
9 to plaintiff's letters to Dr. Wolfe.  Plaintiff had written letters concerning defendant Debrina
10 Williams' alleged cancellation of the liver biopsy plaintiff alleged Dr. Wolfe had ordered on
11 November 23, 2003, and plaintiff's request that Dr. Wolfe order plaintiff to be provided with
12 pegylated interferon treatment with ribaviren to prevent further permanent damage to plaintiff's
13 liver.  (Pl.'s Second Amended Complaint at 15-16.)  By letter dated March 3, 2004, Dr.
14 Goodnight responded to these letters by confirming the University of California, Davis Health
15 System was under contract to provide medical services to inmates.  (Pl.'s Second Amended
16 Complaint, Ex. P.)  However, Dr. Goodnight also confirmed that "[t]hese services are provided
17 upon request of the California Department of Corrections authorities."  (Id.)  Dr. Goodnight then
18 took the further step of forwarding copies of plaintiff's letters to Department representatives at
19 Mule Creek State Prison, specifically addressed to defendant Dr. Brett Williams.  (Id.)  Dr.
20 Goodnight further advised plaintiff that "future requests for medical services should be made to
21 Dr. Williams" at Mule Creek State Prison.  (Id.)

22        Plaintiff further contends that by writing detailed letters that included his specific
23 health information, both Dr. Wolfe and Dr. Goodnight were placed on notice that the liver biopsy
24 had been cancelled and that their failure to intervene on plaintiff's behalf would establish their
25 deliberate indifference to his serious medical needs because he would sustain permanent damage
26 to his liver.

A prison official acts with "deliberate indifference ... only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir.2002) (citation and internal quotation marks omitted). Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." Gibson, 290 F.3d at 1188 (citation omitted). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Farmer, 511 U.S. at 839. "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992)(alteration and citation omitted).

Initially, the court notes that it is unclear that defendant Dr. Wolfe actually ordered a liver biopsy. Although plaintiff claims defendant Wolfe completed a form 7221 ordering a liver biopsy and states it is appended as Exhibit M to his complaint, only three documents are appended: an inmate priority pass, a CDC 7254 form dated November 20, 2003, and a CDC 7230 form dated November 20, 2003. (Id., Ex. M.) None of these forms appear to be signed by Dr. Wolfe and none of them affirmatively state Dr. Wolfe ordered a biopsy. (Id.) The CDC 7230 form references the telemedicine conference with Dr. Wolfe, but states "Consider getting biopsy." (Id.) Such a statement is not an order requiring the biopsy to be performed. The court has reviewed all of the CDC 7221 forms appended to plaintiff's second amended complaint and none of them are dated November 20, 2003 and none appear to be signed by Dr. Wolfe. (Pl.'s Second Amended Complaint, Exs., passim.)[2] A showing of nothing more than a difference

---

[2] October 29, 2001 (Ex. B); February 14, 2002 (Ex. B); June 20, 2003 (Ex. H), July 1, 2003 (Ex. H); November 14, 2003 (Ex. L); May 25, 2004 (Ex. S); February 28, 2005 (Ex. G-1); March 13, 2005 (Ex. M-1); March 13, 2001 (Ex. P-1); August 29, 2002 (Ex. U-1); November 14, 2003 (Ex Y-1); December 12, 2003 (Ex. A-2); August 11, 2004 (Ex. E-2); September 21, 2004

of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir.1970).

But even if Dr. Wolfe ordered a liver biopsy to be performed on plaintiff, plaintiff's complaint does not demonstrate Dr. Wolfe's deliberate indifference concerning that order. Dr. Wolfe met with plaintiff by videoconference and offered his medical opinion as to the medical treatment that should be performed. Plaintiff contends Dr. Wolfe wrote the following on the CDC-7221 form: "(3) Schedule Liver BX for staging & fu (follow up)> results return." (Pl.'s Opp'n at 7.) It is clear from the complaint and the exhibits appended thereto that medical staff and doctors at the prison were in charge of scheduling these medical treatments. Plaintiff has provided no facts that demonstrate Dr. Wolfe was responsible for scheduling the biopsy or impeded the scheduling of the biopsy.

Plaintiff's complaint also does not demonstrate deliberate indifference on the part of Dr. Goodnight. Dr. Goodnight responded to plaintiff's letters written to Dr. Wolfe and affirmatively acted by sending the letters to Dr. Williams at the prison. Such actions on the part of Dr. Goodnight do not constitute deliberate indifference under the above standards.

Plaintiff has provided no authority for his novel theory that writing letters to specialists somehow obligates them to affirmatively act on his behalf. Unincarcerated people with health problems who seek assistance of specialists are usually required to seek a referral to a specialist by making an appointment with their general practitioner. Incarcerated persons are similarly required to use the procedures in place to obtain referrals to specialists. Placing on physicians a duty to affirmatively act based solely on a letter would unduly burden doctors and would pose a case management hardship. As defendants note, the Medical Center contracts to perform medical services authorized by the CDC. The telemedicine consultation with Dr. Wolfe

---

(Ex. F-2); October 28, 2004 (Ex. H-2); and November 19, 2004 (Ex. J-2).

was authorized by the CDC. Dr. Wolfe then recommended that a liver biopsy be performed. But that recommendation was subject to authorization by the CDC, who chose to decline to perform the test. Plaintiff's remedy then was to challenge their decision, using CDC's appeal procedures, which plaintiff successfully did.

In the instant action, it is clear from the complaint that there is no evidence that Dr. Wolfe or Dr. Goodnight were responsible for the failure to promptly perform the biopsy: there is nothing in the complaint to demonstrate that Dr. Wolfe or Dr. Goodnight were responsible for the scheduling of the biopsy or that Dr. Wolfe or Dr. Goodnight in any way hindered its performance. The delay in obtaining the liver biopsy also does not appear to have been the fault of either Dr. Wolfe or Dr. Goodnight. The second amended complaint suggests that it was Debrina Williams who allegedly cancelled the biopsy. Moreover, at least one form appended to plaintiff's complaint suggests that orders by specialists must be submitted to a prison referral committee for an ultimate decision on whether the medical procedure takes place. (Pl.'s Second Amended Complaint, Ex. E-1 "CDC 7243 Physician Request Service") It appears prison administrators or other prison officials were responsible for scheduling medical treatments, such as a liver biopsy, and Ms. Williams told plaintiff it was her decision whether or not plaintiff received one. (Pl.'s Second Amended Complaint at 15.) Ms. Williams stated: "I am in charge of the hepatitis C program and I decide who qualifies for treatment. You do not qualify for a liver biopsy or interferon treatment." (Id.)

Finally, plaintiff contends all of the named defendants herein "established a policy, practice, custom and protocol, of referring HCV infected inmates to the Medical Authorization Committee and specialists . . . as a means of delaying and/or denying liver biopsies and interferon treatment" and that defendants Brett and Debrina Williams conspired with other defendants to deny and delay the liver biopsy ordered on November 20, 2003. (Second Amended Complaint at 28.) However, plaintiff has provided no facts to support the participation of either Dr. Wolfe or Dr. Goodnight in either of these claims. The facts plaintiff has provided,

concerning the actions and statements of the other defendants herein, preclude the participation of Dr. Wolfe or Dr. Goodnight in either of these claims.

In short, the second amended complaint and the exhibits appended thereto do not provide a basis for a finding that either doctor was "deliberately indifferent" to plaintiff's medical condition. Accordingly, plaintiff's claims against Dr. Goodnight and Dr. Wolfe should be dismissed with prejudice. Although plaintiff contends he should be granted leave to amend his complaint as to these two defendants, such amendment would be futile under these facts.

Moreover, although not set forth by defendants, the court has noted that plaintiff is no longer in custody and is presently on parole. By his complaint, plaintiff sought injunctive and declaratory relief and monetary damages. When an inmate seeks injunctive relief concerning an institution at which he is no longer incarcerated, his claims for such relief become moot. See Sample v. Borg, 870 F.2d 563 (9th Cir. 1989); Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986). See also Reimers v. Oregon, 863 F.2d 630, 632 (9th Cir. 1988). Plaintiff having demonstrated no reasonable possibility that he will be re-incarcerated at any predictable time in the future, his claims for injunctive relief have become moot. As plaintiff's allegations with regard to prospective injunctive relief are mooted, it follows that plaintiff cannot maintain an official capacity lawsuit for injunctive relief on the basis that a policy or procedure of the state is at issue. Haber v. Melo, 502 U.S. 21, 25 (1991).

This action, therefore, can only proceed on plaintiff's request for money damages. Thus, plaintiff's second amended complaint will be dismissed and plaintiff will be granted leave to file a third amended complaint.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, the third amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the

claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff shall omit his claims concerning defendants Wolfe and Goodnight.

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's third amended complaint complete.  Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files a third amended complaint, the original pleading no longer serves any function in the case.   Therefore, in a third amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.   However,  plaintiff need not duplicate the exhibits plaintiff previously attached to his second amended complaint.

Accordingly, IT IS HEREBY ORDERED that:

1. The March 30, 2006 hearing is vacated;

2. The February 24, 2006 motion to dismiss by defendants Wolfe and Goodnight is granted and their claims are dismissed with prejudice;

3. Plaintiff's second amended complaint is dismissed; and

4. Plaintiff is granted thirty days from the date of service of this order to file a third amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the third amended complaint must bear the docket number assigned this case and must be labeled "Third Amended Complaint"; plaintiff must file an original and two copies of the third amended complaint; failure to file a

/////

/////

1 third amended complaint in accordance with this order will result in a recommendation that this
2 action be dismissed.
3 DATED: March 27, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

7  001; gama0859.mtd